BOWEN et al. v. OLSON. OLSON v. BOWEN et al.

No. 7736.   Decided July 8, 1952.   (246 P. 2d 602.)

See 74 C. J. S., Quieting Title, sec. 50. Jurisdiction of suit to quiet title upon service on nonresident by publication, 31 Am. Jur. Judgments, sec. 766; 51 A. L. R. 754.

*Cyrus G. Gatrell* Salt Lake City, *Clyde S. Johnson,* Vernal, *Culbert Olson,* Los Angeles, Cal., for appellant.

*George B. Stanley,* Heber, *Hugh W. Colton,* Vernal, for respondents.

WADE, Justice.

J. Parry Bowen, since deceased and his administratrix substituted for him, and others brought suit to quiet title to a number of tracts of land against Culbert L. Olson and others. This appeal involves only the tracts of land

claimed by Culbert L. Olson, the other defendants and tracts of land being separate and unrelated to his claim. The court granted a summary judgment quieting title in the plaintiffs below and respondents herein to an 80-acre tract of farm land claimed by Culbert L. Olson, appellant herein.

From the record it appears that Culbert L. Olson was the record owner of the tract of land involved herein since 1915. In September, 1946, J. Parry Bowen commenced an action against Culbert L. Olson to quiet title to the same tract of land involved in the instant suit and a default judgment was obtained in that suit. The present action was commenced in September, 1948 and summons was served by publication and the mailing of the summons and complaint by the clerk to Culbert L. Olson at 910 Stock Exchange Building, his address in Los Angeles, California, on August 19, 1949. Olson filed an answer claiming ownership and asking that the title be quieted in him. Subsequent to the filing of this answer and after communication with one of the attorneys for respondents he obtained from this attorney an abstract of title to the property from which he first learned of the default judgment obtained by J. Parry Bowen, one of the original plaintiffs in the instant action. Olson thereafter filed four amended cross-complaints, all attacking the validity of the default judgment. In his last amended cross-complaint, appellant set forth more particularly his allegations of lack of service of summons and fraud practiced on the court in obtaining the judgment. Therein he averred that the default judgment entered against him in 1946 was void and should be vacated and set aside because the summons in that action was not served on him as required by law since the affidavit required for the order of publication of summons did not contain probative or evidentiary facts from which the clerk of the court or judge could determine his place of residence was unknown so as to dispense with the necessity of mailing a copy of the summons and complaint to him nor were there such facts alleged therein from which the judge or clerk

could determine that due diligence had been used to discover his residence. Appellant further alleged that the following statements in the affidavit that:

" 'Personal service thereon (Summons) cannot be had' and 'that affiant, for the purpose of finding said defendant, has made diligent search and inquiry in the State of Utah, and has checked the records of *both* to determine the last address of the defendant, and finds that this last address was:

" 'Culbert L. Olsen—unknown' "

were deliberately false and fraudulent because nowhere in any records did the affiant find the last address of appellant to be 'Culbert L. Olsen—unknown." Also, there was no return on the summons which was filed on the same day the complaint and the affidavit were filed and the order for publication of summons was issued by the clerk. Appellant also alleged that the plaintiff, his attorney and the clerk all had convenient means at the time the action was brought of ascertaining his residence from the assessment rolls of the county assessor and county treasurer, where from 1929 to 1938, when the property was assessed to him, his address appeared as 910 Stock Exchange Building, Los Angeles, California, and this is still his address. That for many years prior to the suit and since he has been a member of both the Utah and California State Bars and that his name and address were published in the telephone and the city directors of Los Angeles and in the published lists of attorneys. That he had been a member of both the Utah and California State Senates in the past and the Governor of the State of California from 1939 to 1943 and this fact was well known and publicized in Uintah County and Utah generally and the affidavit for publication of summons upon which the order was based was purposefully false and fraudulent for the purpose of preventing appellant from knowing of the existence of the action and from appearing and defending his title, he having a good and meritorious defense to the action. He also averred that he did not file a cross-complaint sooner in the instant action because one

of the attorneys for respondents had indicated that they would not rely upon the validity of this judgment.

Respondents' answer to this cross-complaint admitted most of the allegations except any knowledge of appellant's prominence in the political field or that his residence was known or should have been known, or that appellant was misled into believing that respondents would not rely on the default judgment, denied any fraud, admitted that they relied in the default judgment as one of their claims to title of the land involved, but alleged that they also relied on adverse possession. They further alleged as defenses to the cross-complaint that it was barred by the provisions of Rule 60(b), U. R. C. P. and laches and that the default judgment was res adjudicata against all the claims made in the cross-complaint. Appellant filed a denial to this answer.

Respondents filed a motion for summary judgment based upon the record before the court consisting of the files in the action wherein the default judgment was procured by J. Parry Bowen against appellant, the abstract of title which had been introduced in evidence in the instant case and the files and records of the instant case.

The court granted respondents' motion for summary judgment on the grounds that the action in which the default judgment was obtained was res adjudicata of appellant's claims in his cross-complaint because the court concluded that his claims were a mere collateral attack and not a direct attack against that judgment, that the cause of action in the cross-complaint was barred by Rule 60(b), U. R. C. P., and that appellant was guilty of laches because he had failed to attack the judgment for more than three months after he had received the abstract of title in which an entry of the default judgment appeared, and more than three years after the entry and recording of such judgment.

In *Liebhart* v. *Lawrence*, 40 Utah 243, 120 P. 215, this court held that an action brought to vacate a default judg-

ment on the grounds the service of summons by publication was obtained by fraud is a direct and not a collateral attack. In that case the complaint, among other allegations of fraud, alleged that the affidavit upon which the order for publication was based, contained a false averment about the residence of the defendant being unknown and also failed to disclose due diligence used by any one to discover his residence. The lower court dismissed the action because no motion to set aside the judgment had been made within one year after its entry as required by then Sec. 3005, C. L. 1907, later Sec. 104-14-4, U. C. A. 1943, although the plaintiff knew of such judgment less than one year after its entry. In holding the lower court erred in dismissing the action, this court made it clear that the remedy provided by the statute is not exclusive and that a suit in equity to set aside a judgment for fraud in its procurement may be brought after the time limited in the statute for a motion to set aside a judgment. Rule 60(b), U. R. C. P., supersedes and is substantially the same as Sec. 104-14-4, U. C. A. 1943. The Rule specifically provides that it

"does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding or to set aside a judgment for fraud upon the court."

It follows from what we have said that the lower court erred in holding that the cross-complaint was a collateral attack and res adjudicata of the issues presented therein and that the action was also barred by Rule 60(b). Respondents have cited the case of *Butler* v. *McKey*, 9 Cir., 138 F. 2d 373, 376, for the proposition that even if the action is a direct attack it must be treated and considered under the principles applicable to a collateral attack. That case while so holding was interpreting the California law under which a direct attack on a judgment must be treated as a collateral attack when the time for appeal has expired. Such is not the law here, but even if it were, respondents

could not prevail, because as stated in *Butler* v. *McKey, supra,*

"It is a basic rule that a judgment is void and subject to collateral attack if a lack of jurisdiction in the court appears on the face of the record."

The affidavit for publication of summons recited:

"That the defendant, Culbert L. Olsen, resides outside the State of Utah, and person [sic] service thereon cannot be had.

"* * * That affiant, for the purpose of finding said defendant has made diligent search and inquiry in the State of Utah, and has checked the records of both to determine the last address of the defendant, and finds that his last address was:

"Culbert L. Olsen—Unknown"

Under the provisions of Sec. 104-5-12, U. C. A. 1943, which was controlling when that action was commenced, service of summons could be made by publication:

"Where the person upon whom service is to be made resides outside of the state, or has departed from the state, or cannot after due diligence be found within the state, * * * or where in an action in rem some or all of the defendants are unknown, and any of such facts appear by affidavit of the plaintiff or his agent to the satisfaction of the court or a judge thereof, or of the clerk, * * *."

and Sec. 104-5-13 provides:

"* * * In case of publication where the residence of a nonresident or absent defendant is known, the clerk must forthwith deposit a copy of the summons and complaint in the post office, postage prepaid, directed to the person to be served at his place of residence. * * *"

It will be noted that Sec. 104-5-12 requires that the facts showing nonresidence or due diligence to find a defendant within the state must appear in the affidavit and from these facts the judge, or court or clerk must be satisfied that a defendant is a nonresident or cannot after due diligence be found within the state, before an order for publi-

cation can be made. If no such facts appear in the affidavit, there is no evidence upon which the court, or judge or clerk can act in granting the order and under Sec. 104-5-13, if the residence of the nonresident defendant is known a copy of the summons and complaint must be mailed to him by the clerk.

With these provisions in mind, did the affidavit contain any facts upon which the court or judge or clerk could act in granting an order for publication of summons?

The affiant therein averred that Culbert L. Olson resides outside of the State of Utah and personal service could not be had on him. Although a summons was filed there was no return by an officer or any other person showing any facts from which it could be found that any effort was made to serve it on the defendant within the state. We must therefore look to the statement itself. It states as a fact that the affiant knows that the defendant is a nonresident and personal service cannot be had on him. It is apparent that affiant could have known this to be the fact only if he knew where defendant resided and in that case should have stated the defendant's address so that a copy of the summons and complaint could be mailed to him or after due diligence in attempting to find the defendant within the state and, not being able to do so, concluded that he was a nonresident. Since affiant did not give the defendant's address, the judge or clerk could have regarded this statement only as a conclusion of the affiant based on affiant's failure to find defendant within the state and not as a statement of fact. It became necessary, therefore, for the judge or clerk to determine whether there were facts stated in the affidavit from which it could be found that affiant had used due diligence to find the defendant within the state. Affiant stated that he had "checked the records of both" and found that defendant's last address was "Culbert L. Olsen—unknown". There is nothing in that statement from which the court or clerk could find where or what kind of records were checked or where Culbert L.

Olson's address was listed as unknown. This is not a case of insufficient facts being averred to satisfy the clerk or court that after using due diligence a defendant cannot be found within the state, but no facts at all. A finding of such fact from this evidence would be unreasonable. From all that appears from the affidavit, the records searched may have been outside the State of Utah and the kind of records where it would not be likely to find the defendant's address. As stated by Mr. Justice Wolfe in his concurring opinion in *Parker* v. *Ross*, 117 Utah 417, 217 P. 2d 373, at page 381, 21 A. L. R. 2d 919:

"The statute [Sec. 104-5-12] leaves to the judge who must act on the affidavit the matter of determining whether he is satisfied with the diligence shown but it is like many other matters of discretion not an uncontrolled decision. Important rights are to be decided in the suit. It is important that the defendant have a chance to defend; hence it is important that he be served and for that reason that reasonably diligent efforts be made to locate him so that he may be served.

"If the judge found to his satisfaction that a named defendant was absent from the state merely on the showing that the sheriff of the county wherein the plaintiff resided had made a return that after due diligence and inquiry the defendant could not by said sheriff be found in the state without reciting the diligence used, it would not in law be sufficient. *Liebhart* v. *Lawrence*, 40 Utah 243, 120 P. 215. Nor do I think that it would be sufficient if the showing was that the plaintiff consulted the city directory or telephone directory where there was no showing that the defendant ever lived in the city, or if he lived therein, as to the period of his residence. Absence from the state is a negative fact and proof of it presupposes diligence in showing either that (1) the party never resided in the state, or that if he did, he had departed; and (2) if he never lived here, or had lived here and departed, where his residence really is at the time service of summons is to be had on him."

In the instant case, as appears by the allegations and admissions, appellant's address could with very little diligence have been easily ascertained by a search of the assessment rolls of the county assessor and county treasurer. Such a search was very evidently carefully avoided. The affidavit for publication having

failed to reveal any facts at all from which a judge or clerk could satisfy himself that the requirements of the statute had been met, the publication did not effect service on appellant and the judgment was void on its face for lack of jurisdiction in the court.

It follows from what we have said that the court erred in granting respondents' motion for a summary judgment, even if the court had not erred in concluding that appellant's cross-complaint should be considered under the principles of a collateral attack, which is not the case in this jurisdiction, because as pointed out in *Butler* v. *McKey*, supra, if there is some evidence in the affidavit upon which the order for publication can reasonably be based, even if insufficient to persuade the judge or clerk of the necessary fact, then the judgment cannot be attacked collaterally, but this is not true where the affidavit presents no evidentiary facts.

Reversed, with instructions to proceed in accordance with this opinion. Costs to appellant.

McDONOUGH, J., concurs.

WOLFE, Chief Justice (concurring specially).

I concur.

The affidavit on which the order for service by publication was grounded made an assertion, to wit

"That the defendant, Culbert L. Olson, resides outside the State of Utah".

This was followed by the statement of a correct conclusion of law from that asserted fact, to wit,

"* * * personal service [on Olson] cannot be had."

Then followed three statements: (1)

"* * * that affiant, for the purpose of finding said defendant [Olson] has made diligent search and inquiry *in the State of Utah*"

(2)

"and has checked the records of *both* to determine the last address of the defendant,"

and (3)

"finds that his last address was:

"Culbert L. Olsen—Unknown"
(Emphasis added).

The statement that Culbert L. Olson resides out of the State of Utah was, of course, true, and the legal conclusion therefrom that personal service could not be had was correct. But I think § 104-5-13, U. C. A. 1943 providing that

"In case of publication where the residence of a nonresident * * * defendant is known, the clerk must forthwith deposit a copy of the summons and complaint in the post office, postage prepaid, directed to the person to be served at his place of residence. * * *"

presupposes some duty to make inquiry to ascertain that place of residence outside of the State. See *Parker* v. *Ross,* 117 Utah 417, 217 P. 2d 373, 21 A. L. R. 2d 919.

In this case, the plaintiff affiant asserted only that Olson resided out of the State, which is, and at the time could have been, conceded. He then seemingly proceeded on the theory that if he could make his affidavit speak ignorance of Olson's residence outside the State of Utah, the clerk would owe no duty to obey the mandate of Section 104-5-13. His affidavit states that for the purpose of finding Olson he made diligent search and inquiry *in the State of Utah.* Since in the same affidavit he states positively that Olson resides out of the State of Utah we must presume he thought that he did not need to make inquiry or search for Olson's residence in the State of Utah but that he should make diligent search and inqury in the State of Utah for a disclosure of Olson's residence outside of the State of Utah.

I do not think a search, however diligent, confined to a particular state when one is seeking the address of one knowingly without that state, would in many cases be sufficient or extensive enough in its diligence where one was seeking to get a judgment quieting title to land of another in himself. But the affidavit has other infirmities which will in a moment be noted. The affidavit states that affiant "checked the *records of both*" to determine the last known address of the defendant. This is unintelligible to me. What are "the records of both"? What antecedent does "both" refer to? If he had sworn that "he checked the records" it would be about as indefinite as it could be but it would at least be intelligible. The full fruit of his search was that Olson's last address was "unknown". Now, of course, we must apply common sense. It was not meant to swear that Olson's address was at a place called "Unknown". What was meant to convey was that a search of certain records (but which certain records were not vouchsafed) did not reveal Olson's address.

The statement in the majority opinion that

"* * * the affidavit for publication of summons upon which the order was based was purposefully false and fraudulent for the purpose of preventing appellant from knowing of the existence of the action and from appearing and defending his title * * *"

is blunt and severe but perhaps the facts in this case warrant it. The residence of Olson was on the assessment rolls up to 1938 when the property was sold. Possibly there is some excuse for not searching records after the tax records showed Olson was no longer the owner. And possibly in 1946 when the defaulted action versus Olson was brought there might have been a reason for not knowing how far back to go in the search. But the affiant must have known that Olson once was owner of the property; otherwise he would not have been joined in the quiet title action. Such knowledge, if he was in earnest as to diligence, would have prompted him to look in back assessment rolls for knowledge of when it was last assessed to Olsen and thence con-

tinue the search *before* that date for disclosure of Olson's address. And this is all search within the State of Utah so that even if the plaintiff in the 1946 suit had concluded that he had no duty under Sec. 104-5-10 to make any further search after he ascertained that Olson resided somewhere outside of Utah, he must have decided that he owed a duty to make a diligent search of the records pertaining to the Utah property because he makes affidavits that he did so. Moreover, Olson had been so prominent in the public life of California that a decent inquiry properly directed would have led to a knowledge of his address in that State. At any rate, the mind of the affiant was such as to be so reckless in its statements in the affidavit as to be equivalent to deceit. Long ago in the case of *Derry* v. *Peek,* (1889), 14 A. C. 337, the House of Lords held that a statement made with the knowledge of the maker that he was ignorant of whether it was false or true was equivalent to conscious deceit. We are now in a position to see the force of *Liebhart* v. *Lawrence,* 40 Utah 243, 120 P. 215, which the main opinion discusses. I agree with the statement of the main opinion that this affidavit "presents no evidence 'of any inquiry or search for Olson's residence' ". I am not sure that a person could only know that a defendant was *not* a resident of the State unless he knew the *actual* residence of the defendant outside the state. I suppose that one can know as he knows that Washington once lived, that a person has left the state and resides outside thereof even though he does not know his exact residence or even vicinity of his residence. But I agree that the affidavit states no evidentiary facts at all.

From what I have said above and as I understand the opinion of Mr. Justice Wade, the following principles may be adduced: (1) That an affidavit for publication of summons which recites only the factual conclusion that the defendant resides outside of the State of Utah, thus asserting a fact which makes personal service within the State on such defendant impossible, and sets up no facts in the

affidavit from which the clerk or judge, who upon the strength of the affidavit is asked to make the order of publication, can determine whether affiant has made any search for the whereabouts of the defendant in the State of Utah and if so whether it was a diligent search or inquiry, must, if it develops subsequently that the defendant did reside in and not outside the State of Utah, be subjected to being declared false and the judgment based on service by publication set aside.

(2) It is my understanding that regardless of how certain or how true the fact of defendant's absence of residence from the State of Utah is, publication of summons cannot be made on the basis of an affidavit which simply asserts such absence but the affidavit must disclose facts from which it can be inferred or concluded that the search was as diligent as under the circumstances was reasonably possible; and the facts of diligence disclosed by the affidavit must not only extend to the conclusion of the defendant's nonresidence in the State of Utah but to the affirmative fact of his residence at some definite point elsewhere or at least disclose a diligence from which it can reasonably be deduced that the affiant went as far as a person reasonably could to reveal definiteness of residence out of the state for the utilization by the clerk or judge in his duty to deny or grant the order for publication.

(3) I further understand the decision to hold that the affidavit not only asserted nonresidence in Utah but, save for the mere assertion of diligence and of a checking of records of "both" [whatever "both" refers to], showed affirmatively that the records disclosed that the address of the defendant was not known, whereas readily available and logically suggested records would have disclosed a definite and correct address of the defendant Olson outside of the State; hence it was affirmatively shown that the affidavit was false as to diligence and false as to what the records would have disclosed. Thus the false affidavit per-

petrated a fraud on the court as to a fact which was jurisdictional. With this I agree.

CROCKETT, J., concurs in the opinion of Mr. Justice WADE and also in the views expressed by Mr. Chief Justice WOLFE in his concurring opinion.

HENRIOD, J., concurs in the result.